UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SAVION KAIN FRYE,<br><br>Plaintiff,<br><br>v.<br><br>LT. WILLIAMS, et al.,<br><br>Defendants. | CAUSE NO. 3:26-CV-817-GSL-JEM |

OPINION AND ORDER

Savion Kain Frye, a prisoner without a lawyer, filed a complaint. ECF 1. Under 28 U.S.C. § 1915A, the complaint must be dismissed if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint needs to contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Frye alleges an inmate in his cellblock set himself on fire on March 18, 2026. Thick smoke entered Frye's cell which made it difficult to see or breathe. As a result, his eyes burned and he ended up vomiting. He asked "all the officers" to take him to

medical for a breathing treatment, but they refused citing "too many" requests from other offenders. ECF 1 at 3. Ten days later, another inmate set himself on fire. It burned for twenty to twenty-five minutes before officers were able to put it out. Frye again had trouble breathing during the fire. He asked Lt. Williams if he could go to medical for a breathing treatment, but she denied his request. Between March 28, 2026, and April 7, 2026, two more fires were set by inmates, which produced similar results. On April 8, 2026, Warden Ron Neal, Deputy Warden Jason Norwalkz, Major Douglas Wardlow, and IDOC Commissioner Lloyd Arnold decided to "cut the power to all the cells" in D-cellhouse to combat the repeated fire-making by the inmates. *Id*. at 5.

Frye claims he then had to live in darkness and was unable to see anything "at times." *Id*. It made it difficult to read and eat. To ensure he wasn't urinating on the floor, he had to "pee like like (sic) a girl." *Id*. at 5–6. He was eventually able to fill out a medical request form asking for "medical help and to see mental health," and he submitted a grievance about the conditions on April 15, 2026. *Id*.[1] The defendants listed above "routinely [did] walk throughs" in D-cellhouse after the power was shut off, and Frye tried to talk to them about his "rights being violated" when they walked by. *Id*. at 6. He was told his grievance would be processed when time permitted. According to Frye, Deputy Warden Norwalkz and Major Wardlow told him to "drop the issue" or they would make his life a "living hell." *Id*. Frye further claims he specifically asked Sgt. Naz and Lt. Williams for "medical breathing treatments due to smoke inhalation," but

[1] The grievance states, "[B]eing left without any artificial lighting to enable me to read or write is causing me to become very emotionally distraught and making me have suicidal thoughts." ECF 1-1 at 3.

they told him to "stop bitching." *Id.* at 8. Living in these conditions has caused Frye "stress and depression." *Id.* at 7. As of the day he signed his complaint, Frye says he was still without lighting in his cell. He has sued IDOC Commissioner Lloyd Arnold, Warden Ron Neal, Deputy Warden Jason Norwalkz, Superintendent Dawn Buss, Major Douglas Wardlow, Lt. Williams, Sgt. Naz, and Governor Mike Braun for monetary damages and to be transferred to a different facility.

*I. Conditions*

The Eighth Amendment provides that prison officials "must provide humane conditions of confinement . . . and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)); *see also Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). An official can violate the Constitution if he or she exhibits deliberate indifference to hazardous conditions that may seriously harm an inmate. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021). Deliberate indifference encompasses both objective and subjective components:

> A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate.

*Thomas*, 2 F.4th at 719–20 (internal quotation marks, citations, and brackets omitted). Put another way, an inmate can state a viable claim for deliberate indifference if he alleges the defendant "deliberately ignored a prison condition that presented an objectively,

sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citation omitted).

With regard to the seriousness of the conditions, "[p]risons must 'provide humane conditions of confinement,' *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), but that does not mean that prisons must provide a maximally safe environment free from any minor contaminants, *Carroll v. DeTella*, 255 F.3d 470, 472–73 (7th Cir. 2001)." *Fernandez Haire v. Hepp*, No. 25-1023, 2026 WL 2445437, at *1 (7th Cir. Aug. 20, 2026). "Generally speaking, challenges to conditions of confinement cannot be aggregated and considered in combination unless 'they have a mutually enforcing effect that produces the deprivation of a single, identifiable need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.'" *Johnson v. Prentice,* 29 F.4th 895, 904 (7th Cir. 2022) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). Allegations of vague "overall conditions" aren't sufficient. *Id*. Regarding state of mind, "[d]eliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state a constitutional claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020); *see also Stockton*, 44 F.4th at 615.

Frye's complaint focuses on the effects of the fires, namely the smoke that entered his cell and the eventual loss of power. Regarding the smoke, Frye says only that he was subjected to it during the fires—he experienced vomiting, a burning sensation in his eyes, and difficulty breathing while they were occurring.[2] The fires were set by other inmates and burned for about twenty minutes each. He doesn't say he was injured by the flames or heat, nor does he describe any actions by the defendants during them. He admits the administration took measures (*i.e.*, shutting the power off) to prevent future fires after several had occurred. Based on these facts, Frye hasn't stated a plausible Eighth Amendment conditions claim against any of the defendants as to the smoke that entered his cell on four occasions. *See, e.g.*, *Wells v. Thieret*, 14 F.3d 605 (7th Cir. 1994) (plaintiffs alleged that exposure to smoke from inmate-set fires violated the Constitution because prison officials "could have taken quicker and more effective safety measures to prevent and control the exposure to smoke, such as restricting matches and combustible materials by inmates in segregation," but the court disagreed, noting that "[m]ere negligence does not satisfy the deliberate indifference standard").

Frye also claims the lack of artificial light after the power was shut off violated the Constitution. Depending on the circumstances, light deprivation may trigger Eighth Amendment concerns, although the contours of such a claim are still largely undefined in the Seventh Circuit. *See, e.g.*, *Blanchard v. Hyatte*, No. 3:21-CV-160-CCB-SJF, 2024 WL

[2] Those symptoms will be discussed further below in the medical context.

4038080, at *2–3 (N.D. Ind. Sept. 4, 2024) (collecting cases). The cell in *Blanchard* was described as follows:

> Once the window in Plaintiff's cell was covered by the steel plate, his only sources of light were the small window in his cell door and the light emanating from his prison-issued tablet. According to Plaintiff, light from both sources was very dim. Light came through the cell door window from the day room area outside his cell. Most of the day, the lights were dim and even when they were brightly lit, very little light filtered into Plaintiff's cell. Plaintiff's tablet provided some light, but only enough to view the tablet screen. These limited light sources combined with his inoperable light left Plaintiff in near-total darkness whenever he was in his cell.

*Id*. at *1. The plaintiff in that case alleged he was unable to write grievances, sustained "painful bruises and bloody scrapes" from bumping into things in the darkness, and suffered from headaches, nausea, lack of energy, and anxiety caused by the lack of light. *Id*. Based on the totality of those circumstance, the court allowed him to proceed past a motion for judgment on the pleadings. *Id*.

Here, Frye says he lives in darkness, but he qualifies this by explaining he is unable to see, read, or eat "at times." ECF 1 at 5.[3] He doesn't say when he's unable to do these things, nor does he describe his cell in any way—these missing facts are important to determine whether the totality of the circumstances suggests the conditions are sufficiently serious enough, as an objective matter, to violate the Eighth Amendment. *Thomas*, 2 F.4th at 719–20. For example, being unable to see or read at night—without the benefit of artificial lighting—is a far cry from being subjected to total darkness (or

[3] The attached grievance also qualifies this statement by noting he was left without "any *artificial* lighting." ECF 1-1 at 3 (emphasis added). Of note, although Frye says he isn't able to read at times, it does not appear he has had trouble writing his complaint and various motions in this case.

even near total darkness) twenty-four hours a day. *See, e.g., Schwartz v. Warden*, No. 3:26-CV-604-GSL-JEM, 2026 WL 1279090, at *2 (N.D. Ind. May 8, 2026) (allowing claim to proceed where plaintiff described his specific "bubble cell" at the back of the range under the stairwell as having "steel plates covering the bottom half of the cell" and alleged he was in "complete darkness" twenty-four hours a day); *Blanchard*, No. 3:21-CV-160-CCB-SJF, 2024 WL 4038080, at *1 (steel plate was placed over main window and only light available was from small window in the cell door plus a tablet). Here, Frye's vague description isn't sufficient to state a plausible claim. *See Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) ("A plaintiff must include adequate factual detail to lift his claims from mere speculative possibility to plausibility."); *see also Abuiz v. Brennan*, 443 Fed. Appx. 703, 706 (3d Cir. 2011) (noting that, despite a broken light in his cell, plaintiff had "sufficient light" near the front of it from the window and other areas of the prison to read and write, so "[d]espite some inconvenience" the conditions were "far removed from the type of genuine privation and hardship over an extended period of time that is necessary for a finding of constitutional deprivation") (cleaned up) (quoting *Bell v. Wolfish,* 441 U.S. 520, 542 (1979)). Accordingly, Frye has failed to state any plausible claims regarding the condition of his cell.

*II. Medical*

The Eighth Amendment also mandates that inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and

(2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98. Put another way, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they

are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Accordingly, deference must be given "to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). This standard "reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Additionally, it is not enough that a medical professional be mistaken in his or her judgment. As noted above, the deliberate indifference standard requires a something "akin to criminal recklessness," *Thomas*, 2 F.4th at 722, rather than "negligence, gross negligence, or even recklessness." *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020).

With regard to non-medical prison officials, they generally don't violate the Constitution it they "reasonably relied on the judgment of medical personnel." *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (quoting *Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018)). While prison officials are "presumptively entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care[,]" they may not ignore a prisoner's complaints entirely or refuse to act if they know the medical staff is failing to treat the prisoner. *Id.* (internal quotation marks and citations omitted). That said, "[a]n official's 'mere negligence in failing to detect and

prevent subordinates' misconduct is not sufficient.'" *Id.* (quoting *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011)).

Frye's complaint raises two distinct medical concerns. First, he says he experienced vomiting, a burning sensation in his eyes, and difficulty breathing from the smoke during the fires. Directly following the second fire on March 28, 2026, he asked to speak with Lt. Williams. When she arrived, he asked her to take him to medical for a "breathing treatment." ECF 1 at 4. She denied his request and refused to provide him with a medical slip or grievance form. Later, he says he asked Sgt. Naz and Lt. Williams to take him to medical for "breathing treatments due to smoke inhalation," and they told him to "stop bitching." *Id.* at 8. Although the details are sparse, it can reasonably be inferred that these individuals knew Frye was experiencing symptoms from the smoke and actively precluded him from being assessed by medical. Accordingly, Frye will be allowed to proceed against them on Eighth Amendment claims for damages. However, Frye hasn't provided sufficient details to suggest he continued suffering from the smoke's effects after the immediate threat from the fire(s) ceased, nor has he plausibly alleged any of the other defendants were aware of yet deliberately ignored his serious medical needs related to the smoke inhalation. He says he filled out "medical requests" asking for "medical help" (ECF 1 at 5), but these sparse allegations are insufficient to state a claim. *See Schillinger*, 954 F.3d at 994 ("plaintiff must include adequate factual detail to lift his claims from mere speculative possibility to plausibility"); *see also Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) ("A defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged

violation.") (citation omitted)); *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) ("[T]he division of labor is critical to the efficient functioning of the [prison] organization."); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (There is no general respondeat superior liability under 42 U.S.C. § 1983.).

Frye also claims he filled out a medical request to "see mental health" at some point following the fires. ECF 1 at 5. He doesn't describe that request in further detail, but he asserts he has "mental health issues." *Id*. at 7. He believes the condition of the cell has caused him "a great deal of stress and depression" including suicidal ideation. *Id*. He asserts that "nobody here at ISP" is taking him seriously and alleges there have been no "real mental health staff" working at ISP since December of 2025. *Id*. The details about Frye's mental health condition are sparse, but it can be reasonably inferred that his depression, which he alleges has caused self-harm and suicidal tendencies in the past, is serious enough to satisfy the objective prong of the analysis. *See Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 565 (7th Cir. 2021) ("The risk of suicide is a grave one, not one that today's society chooses to tolerate.") (internal quotation marks and citation omitted). However, he hasn't adequately alleged that any of the defendants subjectively knew of such a risk and intentionally disregarded it. *See id*. at 566 ("It is not enough to show that prison officials *should have been* aware of the risk. A defendant is not liable where she was not alerted to the likelihood of the risk of death by suicide.") (cleaned up, emphasis in original). Although Frye claims there have been no licensed mental health staff at ISP for several months, he doesn't allege the defendants knew about his specific issues and failed to assist him. He says he told Warden Ron Neal,

Deputy Warden Jason Norwalkz, Major Douglas Wardlow, and IDOC Commissioner Lloyd Arnold "about [his] rights being violated and nobody responding to it" every time they walked past his cell, but this conclusory statement isn't sufficient to suggest they had knowledge of his allegedly serious mental health issues. In fact, the allegations pertaining to these defendants appear to be focused on the lack of light, which has been addressed above. Based on these facts, Frye hasn't stated a plausible claim of deliberate indifference related to his mental health issues against any of the named defendants. *See Quinn*, 8 F.4th at 569 (acknowledging that "[m]ental health is notoriously difficult to assess and treat" but finding that the plaintiff didn't tie the individual defendants to specific Eighth Amendment violations as needed in order to proceed); *see also Moderson*, 137 F.4th at 617 (only defendants who caused or participated in violation are liable); *Aguilar*, 861 F.3d at 633 (division of labor in prison operations is critical); *Burks*, 555 F.3d at 594 (no respondeat superior liability).

That said, because Frye is pro se, the court will construe his allegations generously to include a plausible claim for permanent injunctive relief. He says he has depression that has included suicidal ideation and self-harm/suicide attempts in the past. He claims his condition has worsened over the last several months and that he isn't being provided with sufficient help for his mental health issues. While these allegations are sparse and don't provide details about his specific symptoms, timing, health care requests, or the care/lack thereof he has received, the court will give him the benefit of all reasonable inferences at this early stage and allow him to proceed against

the Warden[4] in his official capacity to ensure he is being provided with constitutionally adequate mental health treatment for the specific issues described above. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (warden of a correctional facility has both the authority and the responsibility to ensure inmates are housed in conditions that comport with the Eighth Amendment). Frye is reminded, however, that he is not entitled to demand specific medical care, and any relief will be narrowly drawn. *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (Prison Litigation Reform Act mandates that "remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right.") (internal quotation marks, brackets, and citations omitted)).

The court must also address the separate motion for preliminary injunction filed by Frye. ECF 3. A preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain a preliminary injunction, a movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020)

---

[4] Ron Neal is no longer the Warden at ISP—Erik Kruger took over that role in September 2026. The clerk will be directed to add the Warden in his official capacity as a defendant.

(quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the merits, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court need not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the merits must be assessed as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.[5] With regard to irreparable harm, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. If the movant meets all the threshold requirements, the court may then "consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the public interest." *Tully,* 977 F.3d at 613 (quotation marks omitted).

---

[5] The Seventh Circuit has recognized this step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate to another prison—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, the ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

Here, Frye seeks a preliminary injunction "asking to not be retaliated against anymore" and to be transferred to a different prison that can help with "all of my mental health issues." ECF 3 at 1. He says he had been threatened by "most of the officers here" since he started filing grievances and has been "punched in my face" by two non-defendant officers. *Id.* at 2. He states, "All of the Sgt's, Lt's, Capt's, & Ofc's here have told me that my life isn't safe since I'm filing grievances & a suit against them." *Id.* at 4. Frye hasn't stated any plausible First Amendment retaliation claims in his complaint, and the broad assertion in his motion—that essentially everyone at ISP has threatened to harm him for filing unspecified grievances—isn't sufficient to warrant preliminary injunctive relief on those grounds. *See Univ. of S. Ind.*, 43 F.4th at 791 (court need not analyze the remaining elements when there is no chance of success on the merits).

Frye also claims his mental health issues have gotten worse since he was placed in the segregation unit at ISP on July 20, 2025. He says his long-standing depression has caused self-harm and suicide attempts in the past which have led to being placed on suicide watch for "long periods by mental health." ECF 3 at 2. He asserts that there have not been any mental health staff at ISP for the past four to six months who are "clinically licensed to help inmates with real mental health issues," but he admits that the Warden "recently" ordered staff to ensure "routine checks" on the inmates are performed. *Id.* at 3.

The problem with these allegations is that they are too vague to demonstrate Frye has a reasonable likelihood of success on the merits. *See Pritzker*, 973 F.3d at 762–63 ("a mere possibility of success is not enough"). As noted above, the allegations in his complaint regarding his mental health issues are sparse. Neither his complaint nor his motion provides sufficient details about his symptoms, healthcare requests, or the care/lack thereof he has received. For example, while he says he has had self-harm and suicidal tendencies in the past due to his depression, he doesn't say when those events occurred or what happened during them. And, while he says his mental health is worsening following the fires and electrical shut-off, he doesn't allege he submitted any recent healthcare requests, describe any recent self-harm or suicidal incidents, or even provide details about his current state—asserting he is generally suicidal isn't sufficient. Moreover, Frye admits the Warden recently began implementing routine checks on the inmates in segregation. Although Frye says these routine checks haven't helped him, he acknowledges information about inmates' health conditions at ISP have been reported

and transmitted to mental health staff "downstate" for monitoring. ECF 3 at 3.[6] While the court will allow Frye to proceed on a permanent injunctive relief claim regarding his mental health issues, his filings to date haven't met the heightened standard necessary to grant a motion for primary injunctive relief. *See Univ. of S. Ind.*, 43 F.4th at 791–92 (highlighting the difference between the two standards and noting that the court need not accept plaintiff's allegations as true or give him the benefit of all inferences when deciding a motion for preliminary injunction); *see also Halczenko v. Ascension Health, Inc.*, 37 F.4th 1321, 1325 (7th Cir. 2022) (alleged harm that is generalized and speculative isn't sufficient to "warrant the extraordinary remedy of preliminary injunctive relief"); *Cassell*, 990 F.3d at 544 (a preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it").

For these reasons, the court:

(1) GRANTS Savion Kain Frye leave to proceed against Lt. Williams and Sgt. Naz in their individual capacities for compensatory and punitive damages for preventing him from being assessed by medical for his symptoms of vomiting, a burning sensation in his eyes, and difficulty breathing directly following the March/April 2026 fires in violation of the Eighth Amendment;

(2) DIRECTS the clerk to add the current Warden of the Indiana State Prison in his official capacity as a defendant;

---

[6] Of note, there is no constitutional requirement that mental healthcare providers be located onsite—these days, it's not uncommon for mental health visits to be conducted via video conference, both in prison settings and within the medical community generally.

(3) GRANTS Savion Kain Frye leave to proceed against the Warden of the Indiana State Prison in his official capacity to ensure he is provided with constitutionally adequate mental health care for his depression and self-harm/suicidal tendencies to comport with the Eighth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Warden Ron Neal, IDOC Commissioner Lloyd Arnold, Deputy Warden Jason Norwalkz, Superintendent Dawn Buss, Major Douglas Wardlow, Williams, and Governor Michael Braun;

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Warden of the Indiana State Prison, Lt. Williams, and Sgt. Naz at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(7) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information;

(8) ORDERS, under 42 U.S.C. § 1997e(g)(2), the Warden of the Indiana State Prison, Lt. Williams, and Sgt. Naz to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order;

(9) DENIES the motion for preliminary injunction (ECF 3); and

(10) DENIES the request for status report (ECF 5) as moot.

SO ORDERED on November 20, 2026

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT